**Bonita Rose HRYNDA, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

No. 95–771–CIV–T–17(E).

United States District Court, M.D. Florida, Tampa Division.

July 5, 1996.

---

Dwight M. Wells, Law Office of Dwight M. Wells, Tampa, FL, for plaintiff.

Steven A. Nisbet, U.S. Attorney's Office, Middle District of Florida, Tampa, FL, David M. Glass, U.S. Dept. of Justice Civil Division, Washington, DC, Vincent M. Garvey, U.S. Dept. of Justice, Civil Division—Fed. Programs Branch, Washington, DC, for defendants.

## ORDER ON DISPOSITIVE JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

### ORDER

This cause is before the Court on Defendant's Dispositive Motion for Judgment on the Pleadings or, in the alternative, Summary Judgment (Dkt. 8), Plaintiff's response (Dkt. 12), Defendant's Reply Memorandum (Dkt. 13), and Defendant's Supplemental Submission (Dkt. 14).

This Court has jurisdiction over this case pursuant to 28 U.S.C. sections 1331, 1346, and 2201. Further jurisdiction is founded in the First and Fifth Amendments of the United States Constitution.

### FACTS

Plaintiff has alleged the following facts in support of her Complaint for Declaratory Judgment and Injunctive Relief:

1. Plaintiff enlisted in the Naval Reserve on February 15, 1991 for a four (4) year enlistment period.

2. During her fourteen (14) months as a Naval reservist at Naval Air Reserve Jacksonville, Plaintiff's academic, military and leadership performances ranged from excellent to outstanding.

3. In 1991, Plaintiff was selected to attend a reserve modularized version of Intelligence Specialist "A" School.

4. On or about January 31, 1992, Plaintiff was removed from the reserve modularized version of Intelligence Specialist "A" School with a "not observed" ("NOB") evaluation.

5. On or about March 13, 1992, Plaintiff was interviewed in connection with an investigation underway by the Naval Investigative Service (N.I.S.) regarding Plaintiff's alleged homosexuality.

6. During this investigation, and in response to a question from a psychologist employed by the U.S. Navy, Plaintiff admitted her sexual orientation.

7. On or about April 21, 1992, Plaintiff signed a Statement of Awareness and Request for or Waiver of Privileges admitting her homosexual orientation and/or defective enlistment and induction due to fraudulent entry into Naval Service by reason of admission of being of homosexual orientation.

8. On or about May 22, 1992, Plaintiff received a discharge citing "Honorable Discharge for the Convenience of the Government due to Homosexuality" and further stating "Not recommended for Reenlistment."

9. No evidence of Plaintiff's academic, military or community activities and performance was ever considered by the Commanding Officer of Naval Air Reserve Jacksonville. The only evidence ever considered was Plaintiff's own statement that she was gay. There was no allegation that Plaintiff had committed any homosexual acts or conduct.

10. The Department of Defense ("DOD") regulations provide that "[h]omosexual conduct is grounds for separation from the Military Service." Homosexual conduct is defined by a "homosexual act, a statement by a service member that demonstrates a propensity or intent to engage in homosexual acts, or a homosexual marriage or attempted marriage."

11. The DOD Regulations provide that the prohibition of the Uniform Code of Military Justice (the "UCMJ") on sexual misconduct be enforced "in an even-handed manner, without regard to whether the alleged misconduct involves homosexual or heterosexual conduct." The speech and behavior proscribed for lesbians and gay men by the DOD regulations is distinct from and more expansive than the sexual misconduct (both heterosexual and homosexual) prohibited by the UCMJ.

17. Plaintiff has no adequate remedy at law.

## STATEMENT OF THE CASE

Plaintiff has requested relief for the following violations:

1. Plaintiff claims the DOD Regulations violate her right to equal protection of the law under the Fifth Amendment to the United States Constitution.

2. Plaintiff claims the DOD Regulations violate her First Amendment right of free speech and free expression.

3. Plaintiff claims the DOD Regulations violate her First and Fifth Amendment rights to expressive and intimate association.

4. Plaintiff claims the DOD Regulations are vague and overbroad, thereby violating her First and Fifth Amendment rights.

5. Plaintiff prays for an injunction to enjoin the Department of Defense from enforcing the regulations at issue in this case.

6. Plaintiff demands a jury trial on all issues presented in this Complaint.

7. Defendant filed its Answer (Dkt. 5).

8. Defendant brought Motion for Judgment on the Pleadings or, in the alternative, Summary Judgment (Dkt. 8).

9. Plaintiff filed Response Memorandum to Defendant's Motion (Dkt. 12).

10. Defendant filed Reply Memorandum with leave of Court (Dkt. 13.)

11. Defendant filed Supplemental Submission (Dkt. 14).

## THE REGULATORY SCHEME

At the time of Plaintiff's discharge from the Naval Reserve, the policy of the military in regards to enlisted personnel and homosexual conduct was set forth in DOD Directive 1332.14, pt. 1, § H (Jan. 28, 1982) ("Old Policy"), *published at* 32 C.F.R. pt. 1, app. A (1994) (superseded); (The "New Policy" directives were issued by DOD in Dec. 1993). With certain exceptions, DOD Dir. 1332.14 required the separation of any enlisted servicemember found to have "engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts," unless certain mitigating factors were found to exist. Pt. 1, § H(1)(c)(1). DOD Dir. 1332.14 also required the separation of any enlisted servicemember found to have "stated that he or she [was] a homosexual or bisexual" unless a further finding was made that the servicemember was not homosexual or bisexual. Pt. 1, § H(1)(c)(2). Homosexual, in this context was defined as "a person, regardless of sex, who engages in, desires to engage in, or intends to engage in homosexual acts." The directive permitted the separation of servicemembers fitting this definition to be discharged based on "preservice, prior service, or current service conduct or statements." Pt. 1, § H(1)(b)(1) & (c).

The individual military services adopted administrative rules requiring separation of homosexual servicemembers pursuant to this directive. The Navy promulgated rules re-

quiring the commencement of separation proceedings in any case in which "probable cause" existed that an enlisted member had "engag[ed] in, attempt[ed] to engage in, or solicit[ed] another to engage in a homosexual act or acts" or had made a statement that he or she was a homosexual or bisexual. Naval Military Personnel Manual § 3630400(2)(a)–(b), (4)(a) (Aug. 15, 1991).

Although Plaintiff was in fact discharged pursuant to the "Old Policy", Defendant brought to the attention of this Court and Plaintiff, through this Motion, that Plaintiff was quoting from the "New Policy" in her Complaint. Plaintiff would, as a matter of law, lack standing to challenge discharge under the "New Policy". Plaintiff however, affirmed in her Response that she was challenging pursuant to the "Old Policy". Therefore, the issue of standing is moot.

### STANDARD OF REVIEW

■ This Court will· decide this Motion as one for judgment on the pleadings. On a motion for judgment on the pleadings, the court must view the pleadings in the light most favorable to the nonmovant. The court may grant the motion only if it appears beyond a doubt that the nonmovant can prove no set of facts in support of his claim which would entitle him to relief, or if material facts are undisputed and judgment on the merits is possible by merely considering the contents of the pleadings. *Hallberg v. Pasco County, Florida*, 1996 WL 153673 (M.D.Fla. 1996) citing *Park Center Inc. v. Champion International Corp.*, 804 F.Supp. 294 (S.D.Ala.1992).

### DISCUSSION

This case is one of first impression before this Court. As such, there is no controlling law upon which to proceed. Therefore, this Court will look to other federal circuits who have decided this issue, or a similar issue, for guidance in our judgment.

The material facts are undisputed between the parties. Plaintiff enlisted in the Naval Reserve on February 15, 1991 and was discharged on or about May 22, 1992. Both of these· dates are within the purview of the "Old Policy". During a special background check conducted pursuant to her assignment to the Reserve Intelligence Program at Naval Station, Jacksonville, Florida, certain comments were found in Plaintiff's medical records alluding to her homosexual orientation. Responding to these comments, an agent of the Defense Investigative Service obtained a written statement from the Plaintiff attesting to her homosexual orientation, and her past and present homosexual conduct.

■ The first issue of concern is the amount of deference this Court must show to matters involving decisions emanating from the Military Branch of the government. "[C]ourts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." "[M]ilitary authorities have been charged by the Executive and Legislative Branches with carrying out our Nation's Military Policy." *Goldman v. Weinberger*, 475 U.S. 503, 507–08, 106 S.Ct. 1310, 1313–14, 89 L.Ed.2d 478 (1986). *See Ethredge v. Hail*, 56 F.3d 1324, 1328 (11th Cir. 1995). Because courts are "ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have," *Goldman*, 475 U.S. at 507, 106 S.Ct. at 1313, courts must be "particularly careful not to substitute [their] judgment for what is desirable for that of Congress...." *Rostker v. Goldberg*, 453 U.S. 57 at 68, 101 S.Ct. 2646 at 2653, 69 L.Ed.2d 478 (1981). *See Ethredge*, 56 F.3d at 1328.

**I. Plaintiff claims the DOD Regulations violate her right to equal protection of the law under the Fifth Amendment of the United States Constitution.**

■ Although this circuit has not definitively ruled upon the level of judicial scrutiny that is appropriate in the special context of the military, numerous courts of appeals throughout the country have addressed this question in cases involving the constitutionality of the Old Policy. These courts have unanimously held that the rational basis standard is the correct standard for analyz-

ing this issue. *See Steffan v. Perry,* 41 F.3d 677, 684–85 (D.C.Cir.1994) (en banc); *Meinhold v. U.S. Dep't of Defense,* 34 F.3d 1469, 1478 (9th Cir.1994); *Ben–Shalom v. Marsh,* 881 F.2d 454, 464 (7th Cir.1989), *cert. denied,* 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990); *Woodward v. United States,* 871 F.2d 1068, 1076 (Fed.Cir.1989), *cert. denied,* 494 U.S. 1003, 110 S.Ct. 1295, 108 L.Ed.2d 473 (1990).

■ In applying this standard, as long as the government can present "one plausible, arguably legitimate purpose" for the classification, summary judgment is appropriate unless the plaintiff can demonstrate that the government "could not have possibly have relied on that purpose." *Haves v. City of Miami,* 52 F.3d 918, 923 (11th Cir.1995).

Plaintiff asserts that the unequal distinction of homosexuals as a group serves no legitimate or rational government or military interest, but is based solely on the prejudices and presumed prejudices of heterosexual service members and civilians. Plaintiff further contends that the military ban on homosexuals is irrational and cannot withstand the rational basis standard of review thereby violating her individual right to equal protection of the law.

Defendant asserts that Plaintiff fails to state a claim upon which relief can be granted. Further, Defendant maintains that the military ban on homosexuals in the military under the Old Policy promotes the legitimate state interest of preventing proscribed homosexual acts and protecting unit cohesion within the military.

■ The United States constitutional promise that no person shall be denied the equal protection of the law co-exists with the realization that most legislation classifies for one reason or another, resulting in disadvantage to various groups or persons. *Romer v. Evans,* ⸺ U.S. ⸺, ⸺, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996). If a law neither burdens a fundamental right nor targets a suspect classification, the legislative classification will be upheld if it bears a rational relation to some legitimate goal. *Heller v. Doe,* 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

The federal circuits that have already decided this issue under the Old Policy, have all held uniformly that homosexual acts may validly be prohibited in the military forum. *See, e.g., Steffan,* 41 F.3d at 685; *Schowengerdt v. United States,* 944 F.2d 483, 490 (9th Cir.1991), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1514, 117 L.Ed.2d 650 (1992); *Meinhold,* 34 F.3d at 1477; *Ben–Shalom,* 881 F.2d at 461; *Beller v. Middendorf,* 632 F.2d 788, 812 (9th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 & 454 U.S. 855, 102 S.Ct. 304, 70 L.Ed.2d 150 (1981); *Walmer v. U.S. Dep't of Defense,* 52 F.3d 851 (10th Cir.1995) (pet. for cert. pend'g).

It is incumbent on this Court to compare Plaintiff's claims to those espoused in *Meinhold* since this is the precedent case upon which Plaintiff bases her claims. In *Meinhold,* the plaintiff was an enlisted member of the Navy under the Old Policy. He made a statement on television that he was a homosexual, and the Navy discharged him on account of that statement.

The district court in the Southern District of California found that the Navy's ban against homosexuals was based on status, not on conduct and therefore the policy violated the Equal Protection Clause. The district court granted Meinhold's motion for summary judgment and enjoined the DOD from discharging or denying enlistment based on sexual orientation. The United States Court of Appeals for the Ninth Circuit upheld the ruling of the court below as to the unconstitutionality of discharging Meinhold *solely* due to a statement of sexual orientation devoid of any concrete, desire or intent to act on his homosexual propensity in contravention of the military policy.

However, the court went on to state that "[T]here [was] no dispute in this case that the Navy's policy is constitutionally permissible to the extent it relates to homosexual *conduct.*" *Meinhold* at 1477. In the instant case, Plaintiff has not only stated that she is of homosexual orientation, but also affirmed in her written DIS statement that she has engaged in homosexual conduct previously, during the present time, and probably in the future, as she is involved in an ongoing homosexual relationship. Plaintiff was dis-

charged not because she stated that she was a homosexual, but rather because she signed the DIS statement affirming her past and present conduct. These facts, which are undisputed, would have permitted her discharge under *Meinhold* without raising any questions of equal protection violation.

Additionally, the *Meinhold* court held that the nation-wide injunction ordered by the court below could not stand. *Id.* at 1480. The Court stated that "[A]n injunction should be no more burdensome to the defendants than necessary to provide complete relief to the plaintiffs." *Id.,* citing *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979). Neither the *Meinhold* case, nor the instant case, is a class action suit. Both plaintiffs were seeking only to have their own discharge voided and reinstated.

■ As to Defendant's affirmative defense that Plaintiff failed to exhaust her administrative remedies, this Court finds, in accord with *Meinhold* "[t]hat further proceedings [in this type of case] to exhaust administrative remedies would be futile as it [is] undisputed that a new hearing would result in the same decision." *Meinhold* at 1473. Therefore, this Court is in agreement with the Ninth Circuit on the issue of exhaustion of administrative remedies and denial of injunctive relief.

■ This Court finds that the classification instituted by the DOD Regulations does not impact a fundamental right or a suspect group. "Homosexuality, as a definitive trait, differs fundamentally from those defining any of the suspect or quasi-suspect classes. [Suspect classes] exhibit immutable characteristics, whereas homosexuality is primarily behavioral in nature." *Woodward v. United States,* 871 F.2d 1068, 1075 (Fed.Cir.1989), *cert. denied,* 494 U.S. 1003, 110 S.Ct. 1295, 108 L.Ed.2d 473 (1990). Under the rational basis standard, the DOD Regulations are rationally related to a legitimate state interest. Plaintiff has failed to show in her pleadings that the government "could not have possibly have relied on [the] purpose" that the government contends. *Haves* at 923. Plaintiff has plead no set of facts to entitle her to relief under a claim of Fifth Amendment equal protection violation.

## II. Plaintiff claims the DOD Regulations violate her First Amendment right of free speech and free expression.

Plaintiff asserts in her initial Complaint that the DOD Regulations erect a distinction between the speech and behavior permissible for heterosexuals, and the speech and behavior permissible for Plaintiff and other gay men and lesbians in the armed services. Plaintiff further contends that the DOD Regulations proscribe, punish and chill all public and private speech, and expressive behavior, that would tend to identify persons as homosexuals on the basis of the speech content and viewpoint. Plaintiff did not, however, elaborate on this claim in her Response.

Defendant contends that this challenge should be rejected based on the Supreme Court's repeated affirmation of the validity under the First Amendment of "the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell,* 508 U.S. 476, 487, 113 S.Ct. 2194, 2201, 124 L.Ed.2d 436 (1993); *See Dawson v. Delaware,* 503 U.S. 159, 165, 112 S.Ct. 1093, 1097, 117 L.Ed.2d 309 (1992) ("[T]he Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations ... simply because those beliefs and associations are protected by the First Amendment.").

■ This Court agrees with Defendant on this issue, while relying on the abundance of law throughout the country concerning the use of speech as evidence in proving violations of conduct-based laws. This Court finds no violation of Plaintiff's First Amendment rights by the Navy's use of her spoken and written speech to show violation of the Navy's ban on homosexuality under the Old Policy.

## III. Plaintiff claims the DOD Regulations violate her First and Fifth Amendment rights to expressive and intimate association.

Plaintiff alleges, in her initial Complaint, that the exercise of her right to intimate

association is similarly burdened by the DOD Regulations because they broadly punish any associational activity that might identify Plaintiff as a lesbian servicemember. However, Plaintiff omits any further argument on this issue from her Response and offers no legal support for this claim.

Defendant asserts that the right to intimate association may be circumscribed in the military context to a degree not permitted in civilian society. "While members of the military community enjoy many of the same rights and bear many of the same burdens as do members of the civilian community, within the military community there is simply not the same [individual] autonomy as there is in the larger civilian community." *Parker v. Levy*, 417 U.S. 733, 751, 94 S.Ct. 2547, 2559, 41 L.Ed.2d 439 (1974). "The essence of military service 'is the subordination of the desires and interests of the individual to the needs of the service.'" *Goldman*, 475 U.S. at 507, 106 S.Ct. at 1313.

This Court agrees with the Defendant on this issue, and relies on *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), holding that no one has an intimate association right to engage in homosexual conduct, and *Woodward v. United States*, 871 F.2d at 1075, stating that the extension of privacy rights to homosexual conduct has not taken place.

Furthermore, this Court agrees with Defendant that the Old Policy did not prohibit servicemembers from association with other homosexuals, or politically supporting the furtherance of gay rights either in the civilian or military venue. The Old Policy was aimed at preventing proscribed homosexual conduct and preserving unit cohesion.

The right to expressive association is a derivative right that the Supreme Court has inferred from the First Amendment. This Court finds that the DOD Regulations are not violative of Plaintiff's First Amendment right; therefore, it cannot be expected that a "derivative right [would] receive greater protection than the right from which it was derived." *Salvation Army v. New Jersey Dep't of Community Affairs*, 919 F.2d 183, 189 (3d Cir.1990). Therefore, this Court finds no set of facts upon which Plaintiff's claim could rely which would entitle her to relief.

## IV. Plaintiff claims the DOD Regulations are vague and overbroad thereby violating her First and Fifth Amendment rights.

Plaintiff alleges, in her initial Complaint, that the vagueness and overbreadth of the DOD regulations render it impossible for Plaintiff to know what actions will subject her to sanctions. Plaintiff claims that the Regulations are unintelligible, inconsistent and fail to give adequate notice of what speech, conduct or behavior is proscribed and/or can form the basis for investigation and discharge. Plaintiff omits any further argument on this issue in her Response.

Defendant contends that the Regulations are not vague and relies on the precedent rule regarding vagueness of a statute: "Any law is unconstitutionally vague if people of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

The Old Policy unambiguously required the discharge of any servicemember who engaged in homosexual acts or who demonstrated, by his or her statements, a propensity to do so. DOD Dir. 1332.14, pt. 1, § H(1)(a). Pursuant to the rule of law regarding vagueness challenges as stated above, this Court finds that people 'of ordinary intelligence' would not need to guess at the meanings and definitions contained in the Regulations, nor differ as to its application to specific forms of proscribed behavior and statements. Furthermore, Plaintiff does not deny that her conduct falls within the ambit of the policy. Accordingly, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker*, 417 U.S. at 756, 94 S.Ct. at 2562. Therefore, this Court finds that Plaintiff lacks standing to challenge this regulation on vagueness grounds.

Defendant further contends that the Regulations are not overbroad and relies on

this circuit's controlling precedent in *Fillingim v. Boone,* 835 F.2d 1389 (11th Cir.1988). That court stated that a statute or regulation is overbroad if it "reaches more broadly than is necessary to protect legitimate governmental interests at the expense of the First Amendment." *Id.* at 1398. Furthermore, " 'where conduct and not merely speech is involved,' the overbreadth must 'not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " *Parker,* 417 U.S. at 760, 94 S.Ct. at 2563.

The Old Policy did not discharge a servicemember for the statement itself affirming homosexuality but for the inference that could logically be drawn from the statement that he or she either engaged or was likely to engage in proscribed homosexual conduct. Accordingly, since conduct as well as speech is involved, the overbreadth must be real *and* substantial in relation to the regulation. The scope of the Old Policy was extremely narrow and excluded from the military only those whose conduct included homosexual activities and who, by their statements, demonstrated a propensity to practice homosexual conduct. Therefore, it is not substantial in relation to the regulation's sweep. *See Parker,* 417 U.S. at 761, 94 S.Ct. at 2564 (rejecting overbreadth challenge to provisions of the Uniform Code of Military Justice authorizing the punishment of "conduct unbecoming an officer and a gentleman"); *see also Ethredge,* 56 F.3d at 1329 (rejecting overbreadth challenge to administrative order barring from military installation "bumper stickers or other paraphernalia" that "embarrass[ed] or disparage[d]" the Commander in Chief.)

This Court finds that Plaintiff can establish no set of facts that would entitle her to relief on the challenge of vagueness and overbreadth.

Since this Court has found no alleged claims upon which Plaintiff would be entitled to relief, Plaintiff's demand for jury trial on all issues is moot.

## CONCLUSION

This Court finds that Plaintiff can prove no set of facts in support of her claims which would entitle her to relief. Furthermore, the material facts are undisputed and judgment on the merits may be rendered on consideration of the pleadings alone. Accordingly, it is

**ORDERED** that Defendant's Dispositive Motion for Judgment on the Pleadings (Dkt. 8) is **GRANTED.** The Clerk of Court shall enter a final judgment of dismissal.

**DONE AND ORDERED.**